JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 22-1405 JGB (SHKx)** | Date | November 2, 2022 |
|---|---|---|---|
| Title | *Luis Pacheco v. Costco Wholesale Corporation, et al.* | | |

Present: The Honorable      JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **Order (1) GRANTING Plaintiff's Motion to Remand (Dkt. No. 11); (2) DENYING AS MOOT Defendant's Request for Leave to Appear for Hearing on Motion to Remand Remotely (Dkt. No. 18); 3) REMANDING the Case to the San Bernardino Superior Court; and (4) VACATING the November 7, 2022 Hearing (IN CHAMBERS)**

Before the Court is Plaintiff Luis Pacheco's ("Plaintiff" or "Mr. Pacheco") motion to remand.  ("Motion," Dkt. No. 11.)  The Court finds the Motion appropriate for resolution without a hearing.  See Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS** the Motion and **VACATES** the November 7, 2022 Hearing.[1]

## I.      BACKGROUND

On March 29, 2022, Plaintiff filed a complaint against Defendants Costco Wholesale Corporation ("Costco" or "Defendant"), Chris Marmon, Russ Flores, Marilee Alamilla, and Does 1-100 (collectively, "Defendants") in the San Bernardino Superior Court.  (Motion Ex. 1, "Complaint.")  Plaintiff served Defendant Costco on May 11, 2022.  (Declaration of Derek T. Tran ("Tran Decl.") ¶ 3; Motion Ex. 2, Proof of Service.)  The Complaint alleges ten causes of action: (1) discrimination on the basis of sex/gender in violation of Cal. Govt. Code § 12940(a);

---

[1] On October 27, 2022, Defendant filed a request for remote appearance at the November 7, 2022 hearing on the Motion.  (Dkt. No. 18.)  Because the Court vacates the hearing on the Motion, it DENIES AS MOOT the request.

(2) retaliation in violation of Cal. Govt. Code § 12490(h); (3) retaliation for whistleblowing in violation of Cal. Lab. Code. § 1102.5; (4) negligent supervision, hiring and retention (California common law); (5) wrongful termination of employment in violation of public policy (Cal. Govt. Code § 12490(h)); (6) wrongful termination of employment in violation of public policy (Cal. Lab. Code. § 1102.5); (7) intentional infliction of emotional distress (California common law) ("IIED"); (8) failure to provide compensation to employees not authorized or permitted to take required rest periods (Cal. Lab. Code. § 226.7); (9) failure to pay wages upon discharge (Cal. Lab. Code. § 201); and (10) statutory penalties (Cal. Lab. Code. § 203.) (Complaint.) All but the seventh and eighth causes of action are solely alleged against Costco; the seventh and eighth causes of action are also alleged against Mr. Marmon, Mr. Flores and Ms. Alamilla (collectively, "Individual Defendants"). (See id.)

Costco filed an Answer to the Complaint on June 10, 2022 in state court. (Motion Ex. 3.) Costco did not file a demurrer against Plaintiff's complaint. (Tran Decl. ¶ 5.) Costco took Plaintiff's deposition on June 27, 2022 and received the transcript on July 11, 2022. (Id. ¶ 6; "Notice of Removal," Dkt. No. 1 ¶ 6.) Plaintiff served Costco with written discovery demands on July 8, 2022. (Motion Ex. 4.) Defendant responded by refusing to substantively answer, citing the case's removal. (Motion Ex. 5.) On August 9, 2022, Costco filed its Notice of Removal. (Notice of Removal.) In the Notice of Removal, Costco argued that (1) removal was timely because receipt of the deposition transcript constitutes the "other paper" from which it could first ascertain that the case is removable within the meaning of 28 U.S.C. § 1446(b) and (2) that Plaintiff fraudulently joined Individual Defendants to defeat diversity jurisdiction. (Notice of Removal ¶¶ 6-7.)

On September 8, 2022, Plaintiff filed the Motion. (Motion.) On October 17, 2022, Costco filed an opposition. ("Opposition," Dkt. No. 14.) It concurrently filed a Declaration of Matthew S. McConnell and a Declaration of Chris Marmon in support of the Opposition. ("McConnell Decl.," Dkt. No. 15; "Marmon Decl.," Dkt. No. 16.) On October 24, 2022, Plaintiff replied. ("Reply," Dkt. No. 17.) On October 27, 2022, Costco filed a request for remote appearance at the November 7, 2022 hearing on the Motion. (Dkt. No. 18.)

## II.   FACTS

The Complaint alleges that Plaintiff was hired by Costco in 2017 and worked as a Service Deli Clerk. (Complaint ¶ 9.) Plaintiff is a resident of San Bernardino County, California. (Id. ¶ 1.) Costco is a citizen of Washington. (Notice of Removal ¶ 7.) Chris Marmon is a resident of Fresno, California. (Complaint ¶ 3.) Mr. Marmon was Plaintiff's manager and direct supervisor in his capacity as agent and warehouse manager for Costco. (Id.) Russ Flores is a resident of Fresno, California. (Id. ¶ 4.) Mr. Flores was also Plaintiff's direct supervisor. (Id.) Marilee Alamilla is a resident of Fresno, California. (Id. ¶ 5.) Ms. Alamilla was also Plaintiff's manager and direct supervisor. (Id.)

In May 2021, Plaintiff was informed of allegations made against him by two separate female employees for sexual harassment. (Id. ¶ 13.) Plaintiff was suspended for three days

pending an investigation.  (Id. ¶ 14.)  Following an investigation into the sexual harassment claims, Plaintiff's employment was terminated on June 1, 2021.  (Id. ¶¶ 15-16.)  Plaintiff alleges that he had a consensual and brief relationship with one woman and a "consensual flirtatious relationship [that] did not progress to an intimate relationship" with the other woman.  (Id. ¶ 13.)  He believes that Costco "discriminated against his gender and terminated him instead of conducting a real investigation."  (Id. ¶ 16.)

Against Mr. Flores, Plaintiff alleges that he "began asking Plaintiff Pacheco extremely invasive questions, such as the extent of Plaintiff Pacheco's sexual contact with each female."  (Id.)  He alleges that Mr. Flores "led Plaintiff Pacheco to a private room and told Plaintiff Pacheco to write his statement because this was his only chance to defend himself."  (Id. ¶ 26.)  Once the decision to terminate Plaintiff had been made, Mr. Flores informed Plaintiff that he was being officially terminated and presented him with the termination paperwork for him to sign, which he refused to do.  (Id. ¶ 16.)

Plaintiff alleges that Mr. Marmon refused to elaborate on the findings of the ongoing investigation, stating only that "evidence suggests" Plaintiff violated Costco policy.  (Id. ¶ 15.)  According to the Complaint, Ms. Alamilla informed Plaintiff that he was placed on paid suspension for three days pursuant to the investigation.  (Id. ¶ 14.)

Plaintiff alleges that "Defendants' retaliatory, harassing, and discriminatory actions against Plaintiff during his employment were severe and outrageous misconduct and caused Plaintiff extreme emotional distress."  (Id. ¶ 76.)

## III.    LEGAL STANDARD

Pursuant to 28 U.S.C. § 1441(a), a defendant has the right to remove a matter to federal court where the district court would have original jurisdiction.  Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).  Federal district courts have original jurisdiction over civil actions in which complete diversity of citizenship between the parties exists and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a).  "Complete diversity" means that "each defendant must be a citizen of a different state from each plaintiff."  In re Digimarc Corp. Derivative Litigation, 549 F.3d 1223, 1234 (9th Cir. 2008).

A party seeking removal must file a notice of removal of a civil action within thirty days of receipt of a copy of the initial pleading.  28 U.S.C. § 1446(b).  28 U.S.C. Sections 1446(b)(1) and (b)(3) provide that, "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant," of the initial pleading or "amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  The Ninth Circuit has described this statute as providing "two thirty-day windows during which a case may be removed—during the first thirty days after the defendant receives the initial pleading or during the first thirty days after the defendant receives a paper from which it may be ascertained that the case is one which is or has become removable."  Harris v. Bankers Life and Casualty Co., 425 F.3d 689, 692 (9th Cir. 2005).

Removal statutes are to be strictly construed, Gaus v. Miles, 980 F.2d 564, 566 (9th Cir. 1992), and the party seeking removal bears the burden of proving its propriety, Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996).  See Abrego v. Dow Chem. Co., 443 F.3d 676, 683-85 (9th Cir. 2006); see also Calif. ex. rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (9th Cir. 2004) ("[T]he burden of establishing federal jurisdiction falls to the party invoking the statute[.]").  "[A]ny doubt about the right of removal requires resolution in favor of remand." Moore–Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1244 (9th Cir. 2009) (citing Gaus, 980 F.2d at 566).

Removal is proper despite the presence of a non-diverse defendant where that defendant is a fraudulently joined or "sham" defendant.  Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998).  "There are two ways to establish fraudulent joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'"  GranCare, LLC v. Thrower, 889 F.3d 543, 548 (9th Cir. 2018) (quoting Hunter v. Phillip Morris USA, 582 F.3d 1039, 1044 (9th Cir. 2009)).  The Ninth Circuit has emphasized that "the test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not equivalent."  Id. at 549.  Rather than merely showing that the plaintiff has not alleged facts plausibly stating a claim for relief, a defendant must show that there is no "*possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants[.]"  Id. at 548 (internal quotation marks and citations omitted).  Thus, that a court would grant a motion to dismiss the claim is insufficient to establish fraudulent joinder.  Id. at 550.  "[T]he district court must [still] consider . . . whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend."  Id.  Defendants asserting fraudulent joinder bear a "heavy burden" because of the presumption against finding defendants were fraudulently joined.  Id. at 548; see also Padilla v. AT & T Corp., 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009) (defendant seeking removal based on alleged fraudulent joinder "must do more than show that the complaint at the time of removal fails to state a claim against the non-diverse defendant" but must also show that "there is no possibility that the plaintiff could prevail on any cause of action it brought against the non-diverse defendant"); Gloger v. Lynch, 2016 WL 4770015, at *3 (C.D. Cal. Sept. 12, 2016) (noting that "the burden of proving a fraudulent joinder is a heavy one" because "the removing party must prove that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court"); Hurd v. Am. Income Life Ins., 2013 WL 5575073, at *3 (C.D. Cal. Oct. 10, 2013) ("The defendant must demonstrate that *there is no possibility* that the plaintiff will be able to establish a cause of action in State court against the alleged sham defendant.") (internal quotation marks omitted).

## IV.   DISCUSSION

Plaintiff makes two arguments in the Motion: first, that removal was untimely because it was not filed within thirty days of when Defendant was served with a document from which it could have determined that Plaintiff named "sham" defendants (assuming, *arguendo*, that Plaintiff did name any sham defendants), and second, that Plaintiff did not name any sham

defendants in the Complaint.  (See Motion.)  In its Opposition, Costco argues that Plaintiff failed to comply with Local Rule 7-3, its removal was timely, and the Individual Defendants were fraudulently joined.  (See Opposition.)

For the reasons stated below, the Court agrees with Plaintiff's first argument that removal was untimely, and accordingly does not reach the second basis for remand.  At the outset, though, the Court addresses Defendant's argument that Plaintiff's two grounds for removal are mutually inconsistent or somehow defeat the other.  (See Opposition at 8.)  Costco contends, "Plaintiff cannot argue that Costco should have known at the time of service that the Individual Defendants are sham defendants, while simultaneously arguing that the Individual Defendants are not sham defendants.  Only after deposing Plaintiff did it become unequivocally clear that the Individual Defendants had been fraudulently joined."  (Id.)  This is a bad faith argument.  There is neither anything "illegitima[te]" (id.) about the general practice of arguing in the alternative nor logical inconsistency in Plaintiff's two contentions.  As Plaintiff explains, "Plaintiff's arguments regarding timeliness of the removal all assume, *arguendo*, that Defendants' sham defendant theory has any merit to begin with."  (Reply at 3.)  In the Court's view, it is Defendants' grounds for removal, not Plaintiff's arguments for remand, that may be self-defeating.  As explained below, if one follows Defendant's own logic, it would have been clear from the *Complaint* that Plaintiff had named sham defendants, triggering the right to remove.  While the Court does not reach the argument, it is unconvinced that, even with the additional information supplied by Plaintiff's deposition testimony, Costco meets its burden to demonstrate fraudulent joinder.  It is entirely plausible, therefore, that Defendant's removal was *both* untimely and unsupported by the requisite showing of fraudulent joinder.  That remand might be compelled under two separate grounds provides a compelling reason to *grant*, not *deny*, the Motion.

## A.  Local Rule 7-3

Local Rule 7-3 provides, in part: "[C]ounsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution.  The conference shall take place at least seven (7) days prior to the filing of the motion."  L.R. 7-3.

Defendant argues that the Court should deny the Motion for failure to comply with Local Rule 7-3 because the meet and confer conference did not occur until September 8, 2022, the same day Plaintiff filed his motion for remand.  (Opposition at 4.)  Costco does not attempt to argue it suffered any prejudice from noncompliance with the Local Rule.  (See id.)  Plaintiff acknowledges the mistake and argues that the Court should consider the motion on the merits because Defendant did not suffer prejudice and public policy considerations favor resolution on the merits.  (Reply at 1.)

If a party is not prejudiced as a result of noncompliance with Local Rule 7-3, the Court may consider the merits of the motions.  See, e.g., Reed v. Sandstone Properties, L.P., 2013 WL 1344912, at *6 (C.D. Cal. Apr. 2, 2013) ("Because Reed suffered no real prejudice as a result of

the late conference, however, the court elects to consider the motion on the merits."); <u>De Walshe v. Togo's Eateries, Inc.</u>, 567 F. Supp. 2d 1198, 1205 (C.D. Cal. 2008) ("[T]he Court finds that any potential violation of Local Rule 7-3 did not prejudice Plaintiff and the Court exercises its discretion to evaluate Defendant's motion on its merits."); <u>Wilson-Condon v. Allstate Indem. Co.</u>, 2011 WL 3439272, at *1 (C.D. Cal. Aug. 4, 2011) ("[Defendant] does not appear to have suffered any prejudice from Plaintiff's failure to meet and confer sufficiently in advance, and [Defendant] was able to prepare and submit an opposition. Thus, it appears that no prejudice will result if the Court considers the motion to remand on the merits notwithstanding Plaintiff's failure to comply with Local Rule 7–3."); <u>CarMax Auto Superstores California LLC v. Hernandez</u>, 94 F. Supp. 3d 1078, 1088 (C.D. Cal. 2015) ("Failure to comply with the Local Rules does not automatically require the denial of a party's motion, ... particularly where the non-moving party has suffered no apparent prejudice as a result of the failure to comply") (collecting cases). Costco makes no attempt to demonstrate any prejudice suffered by noncompliance with Local Rule 7-3. The Court finds that a timely meet and confer conference would have been unlikely to resolve the dispute. Moreover, the Court finds that Costco was able to provide a detailed, substantive opposition to the Motion and has not sought additional time to brief the issues. Accordingly, the Court concludes that Defendant has not been prejudiced by Plaintiff's failure to abide by Local Rule 7-3. Denying Plaintiff's Motion on such grounds would cause unnecessary delay without benefit to the parties or the Court.

The Court warns Plaintiff's counsel that it tracks lawyers' violations of the Local Rules and will not hesitate to deny or strike future filings for failure to comply with them. Having rejected Defendant's procedural contention, the Court proceeds to the merits of the Motion.

## B. Costco's Removal was Untimely

The deadline to remove a case is 30 days. 28 U.S.C. § 1446(b). Ordinarily, the basis for removal is clear from the face of the complaint, which means a defendant has 30 days to remove from the date it receives the initial pleading. 28 U.S.C. § 1446(b)(1). But "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." <u>Id.</u> § 1446(b)(3).

Costco relies on Section 1446(b)(3) to justify the timeliness of its removal. (Opposition at 4.) It claims receipt of Plaintiff's deposition transcript constituted the "other paper from which it may first be ascertained that the case is . . . removable." (<u>Id.</u>) Because Plaintiff's deposition was taken on June 27, 2022, Costco received the deposition transcript on July 11, 2022, and Costco removed the case on August 9, 29 days later, Costco argues removal was timely. (<u>Id.</u>) Costco claims that the deposition transcript "spelled out the supposed acts and behaviors by the Individual Defendants on which he bases his IIED claim [] and . . . revealed that they were fraudulently joined." (<u>Id.</u>) Plaintiff argues that, assuming Defendant's fraudulent joinder theory is correct, it would have applied "since service of the complaint." (Motion at 8.) Because

Costco was served with the Complaint on May 11, 2022, and did not remove until August 9, 2022, Plaintiff argues removal was untimely.  (Id. at 6-7.)

The parties appear to agree that Dietrich v. Boeing Co., 14 F.4th 1089 (9th Cir. 2021) should guide the Court's timeliness analysis but dispute its application to the facts at issue.  (See Motion at 7-8; Opposition at 5-6.)  In Dietrich, the Ninth Circuit adopted the "unequivocally clear and certain" standard for determining when it "may first be ascertained that the case is . . . removable" within the meaning of Section 1446(b)(3).  Id. at 1094.  The Dietrich court found that the standard would increase certainty, promote fairness, reduce delays, ensure respect for the jurisdiction of state courts, and "avoid gamesmanship in pleading, preventing plaintiffs from strategically starting the removal clock without the defendants' realization, while still allowing plaintiffs to start the clock and prevent strategic delays simply by making the basis for removal unequivocally clear and certain."  (Id. at 1094, 1095-96) (internal quotations and citation omitted).  Defendant argues that "[o]nly upon receipt of Plaintiff's deposition transcript did it become 'unequivocally clear and certain' that Costco could remove to federal court under the diversity jurisdiction statute because the Individual Defendants are sham defendants."  (Opposition at 5.)  The Court finds that Dietrich does not support Costco's conclusion.

In Dietrich, Plaintiff Connie Dietrich was diagnosed with malignant pleural mesothelioma in July 2018. 14 F.4th at 1091.  "She sued several defendants in October 2018, alleging that her father and husband worked with asbestos-containing products manufactured and/or supplied by the defendants, resulting in her own exposure to asbestos when she washed their clothes, rode in their cars, or cleaned the house."  Id.  One of the twelve defendants was Boeing.  Id.  In her complaint, Dietrich did not allege that her family members were exposed to asbestos as part of Boeing's work with the United States military, "a connection that would have alerted Boeing to a possible basis for removal to federal court under the federal officer removal statute, 28 U.S.C. § 1442."  Id.  The complaint did not contain any significant clues that the case could be removable. Dietrich expressly excepted Boeing from her strict liability claim, premised on the other defendants having sold asbestos-containing products that harmed those like Dietrich, her father and husband.  Id.  "This suggested that Dietrich was not suing Boeing for having sold asbestos-containing products to a third-party like the military, but that Dietrich's claims against Boeing were premised only on her husband's exposure to asbestos as an employee of Boeing."  Id. Moreover, the complaint did not suggest that her claims against Boeing arose from her father or husband's work on military aircraft, while her preliminary fact sheet limited her "locations of exposure" to two locations where a Boeing predecessor operated a facility producing commercial aircraft, "rather than Hawaii, where her husband was stationed during most of his military service."  Id.  Dietrich's November 8, 2018 responses to Boeing's first set of interrogatories reaffirmed the seemingly "civilian" nature of her claims, noting that her husband worked with asbestos only *after* his military service.  Id. at 1092.  Over the next few months, Boeing learned that Dietrich's husband was stationed in California at the tail end of his military service; Dietrich testified in her deposition that her husband "had never told her whether he worked on asbestos-containing aircraft while stationed there."  Id.  On April 19, 2019, Dietrich served amended responses to Boeing's discovery requests, "stating clearly for the first time that 'CONNIE DIETRICH was exposed to asbestos . . . through her now deceased husband's exposure to

asbestos-containing components of BOEING'S aircraft . . . during Mr. DIETRICH'S time in the United States Marine [Corps]." Id. Boeing removed 27 days later. Id. The district court granted Dietrich's motion to remand. Id. The Ninth Circuit reversed, holding that Boeing's removal was timely because "no ground for removal was unequivocally clear and certain until after April 16, 2019," the date Boeing served her amended responses. Id. at 1095. The court reasoned:

> Before April 19, 2019, all the information available to Boeing was ambiguous or misleading as to whether Dietrich's claims against Boeing were related to her husband's service in the military. This information included Dietrich's decision to expressly exempt Boeing from Dietrich's strict liability cause of action; the geographical limitation on Dietrich's locations of exposure; Dietrich's response to Boeing's first set of interrogatories that her husband started working on Douglas aircraft after his military service had ended; and Dietrich's statement during her deposition that her husband had never told her specifically whether he had worked on asbestos-containing aircraft while briefly stationed in California.

(Id.)

Here, Defendant argues that Plaintiff cannot maintain his seventh cause of action (for IIED) and eighth causes of action (for failure to provide rest periods) against Individual Defendants as a matter of law. (Notice of Removal ¶ 7(e).)[2] Defendant argues that the IIED claim is preempted by the exclusivity provisions of the Workers' Compensation Act ("WCA") and that it fails because "none of the Individual Defendants engaged in any extreme or outrageous conduct as required by law." (Id. ¶¶ 7(e), (f).) Costco claims that, like Dietrich, "prior to Plaintiff's deposition, all the information available to Costco was ambiguous and unclear as to the viability of Plaintiff's IIED claim." (Opposition at 5.) The Court is unpersuaded.

Plaintiff observes that "Costco accurately reports Plaintiff's deposition testimony in its Notice of Removal." (Motion at 9.) The Court has reviewed Defendant's summary of Plaintiff's testimony provided in the Notice of Removal and referenced it against the allegations in the Complaint. (See Notice of Removal ¶¶ 7(f)(1-3), (g)-(i).) Plaintiff argues, and the Court agrees, that Plaintiff did not reveal any new information in his deposition or "add or change any material detail to his allegations against [I]ndividual [D]efendants." (Motion at 9.) Mr. Pacheco's IIED claim is based on the workplace conduct of Individual Defendants. (See Complaint ¶¶ 75-82.) Plaintiff alleges, among other things, that Mr. Flores asked him "extremely invasive questions, such as the extent of Plaintiff Pacheco's sexual contact with each

---

[2] Because Defendant's timeliness argument is based on the seventh cause of action, not the eighth, the Court does not analyze the rest period claim here.

female." (Complaint ¶ 77(c).)  He alleges that neither Mr. Marmon nor Mr. Flores explained to him why he was being terminated.  (Id. ¶¶ 77(e), (f).)  Plaintiff testified to these facts, and the others alleged in the Complaint, in almost identical fashion during his deposition.  (See Notice of Removal ¶ 7.)  Costco does not attempt to argue that Plaintiff's deposition contradicted any allegations in the Complaint or modified his narrative in any meaningful way.  (See Opposition at 4-7.)  In contrast, in Dietrich, Dietrich provided "ambiguous or *misleading*" information to Boeing until her amended responses.  14 F.4th at 1095 (emphasis added).  Specifically, Dietrich expressly exempted Boeing from the strict liability cause of action; initially limited her purported locations of exposure; misled Boeing in her first set of interrogatories that her husband had started working on Douglas aircraft *after* his military service had ended; and claimed in her deposition that her husband had never told her whether he had worked on asbestos-containing aircraft while stationed in California.  Id.  Only later did Dietrich reveal that she alleged she had been exposed to asbestos because of her husband's military service.  Id. at 1092.  In other words, the Ninth Circuit clearly reasoned (although did not explicitly find) that Dietrich was engaging in gamesmanship to avoid removal by omitting or misstating her allegations.  Here, however, Plaintiff has done nothing of the sort: he has been consistent about what he alleges and has not "strategically revealed more facts as the case has progressed." (Motion at 10).  Costco cannot claim otherwise.  To the contrary, Plaintiff provides a compelling explanation of why it is Defendant that is playing games:

> In this case, Defendant has engaged in "gamesmanship" in the reverse.  Costco had ample notice regarding the basis for Plaintiff's claims against Individual Defendants.  Costco also had ample opportunity in state court to demur to Plaintiff's complaint and resolve the question of whether Plaintiff has stated sufficient facts to support an IIED claim or California Labor Code section 226.7 claim.  Defendants had 30 days to demurrer after service pursuant to California Code of Civil Procedure § 430.40.  Instead, Defendant did not file a demurrer in state court, deposed Plaintiff while refusing to answer written discovery served on them, and selectively quoted Plaintiff's deposition to support their claim that he has failed to state a claim against the alleged "sham defendants."

(Id.)

Costco musters two responses.  First, Defendant argues that "the exclusivity provisions of the WCA only apply under limited circumstances, and Costco needed to engage in further fact-finding by deposing Plaintiff" in order to determine whether the case was removable. (Opposition at 5-6.)  The WCA provides that where workers' compensation is available to an employee, "the right to recover such compensation is . . . the sole and exclusive remedy of the employee . . . against the employer."  Cal. Lab. Code § 3602.  Defendant relies on Shoemaker v. Myers, 52 Cal. 3d 1 (1990), in which the California Supreme Court held that "disabling injuries, whether physical or mental, arising from termination of employment are generally within the

coverage of workers' compensation and subject to the exclusive remedy provisions, unless the discharge comes within an express or implied statutory exception or the discharge results from risks reasonably deemed not to be within the compensation bargain." Id. at 7.[3]  In Defendant's view, Plaintiff's contention that the IIED claim has always been "based on workplace conduct of the [I]ndividual [D]efendants" (Motion at 8) is undermined by the following allegation in the Complaint: "Defendants' actions described above were outside the normal part of the employment environment.  Plaintiff could not expect that discrimination, harassment, and retaliation based on sex/gender and whistleblowing to be part of his normal employment environment."  (Opposition at 6) (citing Complaint ¶ 78.)  Defendant therefore claims, "Because Plaintiff had alleged that the Individuals' conduct was outside the scope of their employment, Costco needed to depose Plaintiff in order to determine, with unequivocal certainty, whether Plaintiff's purported injury results from conduct 'reasonably coming within the compensation bargain.'"  (Id.) (citing Shoemaker, 52 Cal. 3d at 20.)  This, in turn, supports Defendant's (disputed) legal argument that "claims arising from personnel management decisions occurring during the course of the normal employer-employee relationship" may not provide a basis for an IIED claim.  (Id. at 10.)

The argument fails for a few reasons.  It mischaracterizes paragraph 78 as somehow asserting anything more than a legal conclusion, one that essentially restates the test for when WCA exclusivity bars the claim Plaintiff alleges based on the *factual* allegations that precede it.  Indeed, if Defendant were moving to dismiss the cause of action for failure to state a claim, paragraph 78 is precisely the kind of fact-barren legal conclusion that Defendant would likely urge the Court to disregard.  Nowhere in that paragraph, or anywhere in the Complaint, does Plaintiff allege that Individual Defendants engaged in any relevant conduct outside the workplace or their management decisions, from which one could reasonably believe the cause of action arises.  It simply asserts Plaintiff's view as to the state of the law, which in his mind is at worst unsettled and at best clearly allows the seventh cause of action, an IIED claim based on allegedly illegal discrimination and harassment.  (See Motion at 12-14.)  In his deposition, Plaintiff proceeded to testify according to the same factual allegations he asserted in the Complaint.  Put another way, the parties clearly disagree whether, as a matter of law, the IIED claim is barred or not.  But Plaintiff's alleged facts have been clear and consistent throughout the litigation.  For purposes of the timeliness of removal, it does not matter whether Plaintiff or Defendant is right on the law.  If Defendant is right, it has been right the whole time, and there was no basis in fact to believe the opposite.  And if Defendant is wrong, there would have been no right to remove in the first place.  The point is this: a federal district court was either going to agree or disagree with Defendant's WCA exclusivity argument as a matter of law.  The time to test that legal argument was upon

---

[3] Later in the opinion, the court stated this proposition in nearly identical terms: "[W]e conclude that both the act of termination and the acts leading up to termination necessarily arise out of and occur during and in the course of the employment.  This determination does not, however, resolve the issue whether the exclusive remedy provisions of the workers' compensation law act as a bar to all causes of action arising from a discharge. . . . Where the injury is a result of conduct, whether in the form of discharge or otherwise, not seen as reasonably coming within the compensation bargain, a separate civil action may lie."  Id. at 20.

service of the Complaint.  If the court agreed with Defendant, it would have denied a motion to remand, as federal district courts have sometimes held in similar circumstances.  See, e.g., Plummer v. Tesoro Ref. & Mktg. Co., 2016 WL 3180327 (C.D. Cal. June 3, 2016).  If it disagreed as a matter of law, it would have remanded.  And if the court thought that Plaintiff's claim, as pled in the Complaint, was barred, but believed that it could possibly be saved through amendment, it would have been required to remand as well.  See GranCare, 889 F.3d at 548-50.  The odds may not favor Defendant in such a situation, but that is as it should be: a "defendant invoking federal court diversity jurisdiction on the basis of fraudulent joinder bears a heavy burden since there is a general presumption against finding fraudulent joinder."  Id. at 548 (internal quotations and citation omitted).

Second, Defendant argues that "Costco had no way of knowing what Plaintiff would testify to at his deposition," rendering it "entirely possible" that he could testify to "outrageous conduct" not alleged in the Complaint. (Opposition at 7.)  But surely this is always true, presenting a sweeping argument that could save nearly any untimely removal under Section 1446(b)(3).  A defendant can never know with "unequivocal certainty" whether a plaintiff will say something completely different in his deposition than he does in his complaint.  Mr. Pacheco alleged the same facts in his Complaint and in his deposition.  He believes that a court could now, or upon amendment, conclude that these facts constitute "extreme or outrageous conduct."  Costco evidently disagrees.  But that conclusion just as easily could have been made as a matter of law upon receipt of the Complaint.  This Court is unwilling to hold that a defendant can, or should, wait until after deposing a plaintiff to eliminate any possible doubt that his testimony will differ from his complaint.  Under such a standard, the narrow Section 1446(b)(3) exception would swallow the general rule set forth in Section (b)(1).

Remanding this case thus best comports with the underlying rationales the Ninth Circuit set forth in adopting the "unequivocally clear and certain" standard, namely certainty, fairness, the reduction of delays, respect for federalism, and deterring gamesmanship in pleading.  See Dietrich, 14 F.4th at 1094-96.  Dietrich did not alter another core component of the fraudulent joinder test, one that makes a defendant's burden far higher than that for failure to state a claim: a defendant must show that there is no "*possibility* that a state court would find that the complaint states a cause of action against any" defendant, taking into consideration "whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend."  GranCare, 889 F.3d at 548-550.  As Plaintiff notes, "the proper avenue to challenge the sufficiency of facts to support a cause of action is a demurrer." (Reply at 3.)  Costco could have demurred in state court (within thirty days of service of the Complaint) but chose not to.  Cal. Code of Civ. Pro § 430.40.  Once again, Mr. Pacheco sets forth the policy consequences of allowing defendants like Costco to conduct discovery in state court, essentially claiming that a Plaintiff's "stated legal conclusions [in a complaint] are sufficient to make [the] factual allegations unclear" (Reply at 2), then turn around and remove the action:

> By allowing [more than 30 days to run], Defendants did not test the sufficiency of Plaintiff's allegations in state court.  In the interim, Costco took advantage of the situation and deposed Plaintiff,

> extracting testimony they now say precludes any hope of amending the complaint.
> Now, this Court is left to speculate what a California state court would do given the factual allegations in Plaintiff's complaint along with his deposition.  If this Court allows Defendant['s] action to stand, there will be great uncertainty in the removal process.  Defendants will be able to forgo a demurrer, conduct discovery on a state court level, extract all facts they feel are necessary to preclude amendment, and bring a late removal action per 28 U.S. Code § 1446(c)(3).  This will put all Federal Court judges in the awkward position of speculating what a state court would have done given the same information.

(Reply at 5.)  Essentially, the order of operations Costco attempts here allows it, and any other defendant, to reap the benefits of state court discovery while simultaneously making an end-run around one of the most difficult components of the fraudulent joinder test for defendants to overcome, the possibility of curing a cause of action through amendment.  Dietrich is squarely aimed at deterring gamesmanship in pleading by plaintiffs.  Costco invokes the opinion to justify the manufacturing of "uncertainty" through an equal and opposite strategy of gamesmanship.  But the Court must attempt to read Dietrich in harmony with applicable statutory provisions and other binding precedent.  Sanctioning Costco's strategy would considerably lighten, and in some circumstances eliminate altogether, a defendant's "heavy burden" to demonstrate fraudulent joinder.  GranCare, 889 F.3d at 548.  That is not the law, and Dietrich does not hold to the contrary.

## C.  The Motion Mandates Remand

28 U.S.C. § 1447(c) requires that a motion to remand "based on any defect in removal procedure must be made within 30 days after the filing of the notice of removal[.]"  However, "[i]f it any time before final judgement it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  Id.  The Ninth Circuit has held that "untimely removal is a procedural defect and not jurisdictional," requiring the party seeking remand to file a motion within thirty days of the notice of removal and limiting a court's authority to remand sua sponte.  Maniar v. F.D.I.C., 979 F.2d 782, 784–85 (9th Cir. 1992).  A district court "must act on a timely motion to remand based on a defect in removal procedure."  Buchner v. F.D.I.C., 981 F.2d 816, 819 (5th Cir. 1993).

Plaintiff filed the Motion on September 8, 2022, within thirty days of the Notice of Removal, as required by 28 U.S.C. § 1447(c).  (Motion; Notice of Removal.)  As the Court agrees with Plaintiff that Costco's removal was untimely, the Court GRANTS the Motion.

//
//
//

---

**CIVIL MINUTES—GENERAL**                    Initials of Deputy Clerk mg

## V.    CONCLUSION

For the reasons above, the Court **GRANTS** the Motion and **REMANDS** to the San Bernardino Superior Court.  The November 7, 2022 hearing is **VACATED.**  The Scheduling Conference set for November 21, 2022 is **VACATED.**  The Clerk is directed to close the case.

**IT IS SO ORDERED.**